COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Petty, Chafin and Senior Judge Annunziata


LORI DENNIS

v.      Record No. 0576-14-1

YORK-POQUOSON DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION[*]
PER CURIAM
JULY 29, 2014


FROM THE CIRCUIT COURT OF YORK COUNTY
Marc Jacobson, Judge

(Stephen K. Smith, on brief), for appellant.

(Melanie B. Economou, Assistant County Attorney; Sara Riley
Yohn, Guardian *ad litem* for the minor children, on brief), for
appellee.


Lori Dennis (mother) appeals the orders terminating her rights to three of her children and

approving the orders with the goal of adoption. Mother argues that the trial court erred by denying

her motion to strike and proceeding with the goal of adoption and terminating her parental rights to

her three children. Upon reviewing the record and briefs of the parties, we conclude that this

appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See

Rule 5A:27.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cnty. Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Mother has three children who are the subject of this appeal.[1] On December 15, 2011, the police conducted a drug task force raid of five houses in York County and James City County. Mother lived in one of the houses that was raided in York County. As a result of the raid, the police arrested mother on several drug-related charges. The York-Poquoson Department of Social Services (the Department) removed the children from the home. While mother was released on bond pending her trial, the children remained in the Department's custody.

On February 28, 2012, the York-Poquoson Juvenile and Domestic Relations District Court (the JDR court) found the children to be abused and neglected. The JDR court approved the foster care plans with concurrent goals of return home and relative placement. The Department established several goals for mother in order for the children to return to her home. In order to assist mother, the Department referred her to Colonial Behavioral Health for a substance abuse assessment and mental health assessment. They also arranged for her to have supervised visitation with the children and informed her of the children's medical appointments.

Mother completed a substance abuse assessment and mental health assessment. The provider recommended that she participate in the women's substance abuse group therapy. Mother was late to the first meeting and was rescheduled to begin the group later. Mother did not attend. It also was recommended that mother participate in Narcotics Anonymous (NA) and/or Alcoholics Anonymous (AA) meetings, but she did not do so. She also was supposed to meet with a licensed psychiatrist for possible medical management, but she did not do so.

The Department told mother that she needed to find adequate and stable housing and employment. She lost her job at a gas station prior to her incarceration and did not find suitable housing.

---

[1] Mother has a fourth child, who was removed from her home and placed with her father.

Mother did not maintain weekly contact with the Department. The Department tried to arrange for weekly supervised visitation, but mother attended visitations on a "sporadic" basis.

On April 23, 2012, mother was incarcerated for her criminal offenses. She pled guilty to two counts of possession with intent to manufacture methamphetamines and was sentenced to sixty-six months in prison. While in prison, mother signed up for a drug treatment program. She also completed academic, job training, and parenting classes.

After mother was incarcerated, the Department changed the foster care goal to relative placement. The Department offered services to the maternal grandparents, Cynthia and William Dennis, and provided them with several goals. The Department asked that they complete a substance abuse evaluation and a parenting capacity evaluation, which they completed. The Department determined that the maternal grandparents did not have adequate housing because a boarder, the father of mother's fourth child, lived with them. They also failed to participate in family counseling, maintain weekly contact with the Department, and provide documentation of their current income.

The Department also had concerns about the maternal grandparents' ability to parent the children and meet their needs. Dr. Jennifer Gildea, a licensed clinical psychologist, evaluated the parenting capacity of the grandparents. Dr. Gildea met with the maternal grandparents and observed them interact with the children. She explained that the grandparents had a "laissez faire" approach to parenting and were permissive and lenient. She testified that she did not think that they would be an appropriate placement for the children because "they would need an intensive high level of support and intervention and education and wrap-around services to get them to begin to recognize the needs that were there so that they could be appropriate advocates for the grandchildren." Dr. Gildea made numerous recommendations regarding the grandparents. The Department reviewed the recommendations with the grandparents, and they

were not receptive to completing them. Based on the substance abuse evaluation, Dr. Gildea's evaluation, and their living situation, the Department determined that the grandparents were not an appropriate placement for the children.

The Department investigated other relatives as possible placements for the children; however, the Department was unable to locate any relatives that were suitable and interested in caring for the children.

In 2013, the JDR court terminated mother's parental rights and approved the foster care plans with the goal of adoption. Mother appealed to the circuit court.

On January 16, 2014, the trial court heard evidence and argument from the parties on whether mother's parental rights should be terminated. At the conclusion of the Department's case, mother made a motion to strike, which the court denied. Mother and the maternal grandparents testified. At the conclusion of all of the evidence, mother renewed her motion to strike, which the court denied. The trial court concluded that it was not in the best interests of the children to be placed with the maternal grandparents. The trial court found that mother did not comply with the Department's required terms and conditions within a reasonable period of time.[2] It held that it was in the children's best interests for mother's parental rights to be terminated. Furthermore, the trial court approved the foster care plan with the goal of adoption. The trial court entered orders reflecting its rulings on February 26, 2014. This appeal followed.

ANALYSIS

Mother argues that the trial court erred in denying her motion to strike and entering the orders to terminate her parental rights and approve the foster care plans with the goal of adoption.

_____

[2] At the time of the hearing in circuit court, the children had been in foster care for approximately two years.

- 4 -

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted). When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

### I. Relative placement

Mother argues that the trial court erred in not placing the children with the maternal grandparents. She explains that the children had lived with the maternal grandparents for most of their lives, and the maternal grandparents wanted custody of the children. She contends the Department did not recommend them as a relative placement based on Dr. Gildea's report, but asserts that Dr. Gildea only saw them interact with the children on one day.

Before terminating a parent's rights, "the court shall give a consideration to granting custody to relatives of the child, including grandparents." Code § 16.1-283(A). The "Department has a duty to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options." Logan, 13 Va. App. at 131, 409 S.E.2d at 465.

The maternal grandparents failed to comply with the Department's goals and requirements so that they could be considered as a viable relative placement. Although the grandparents completed the substance abuse and parenting evaluations, they did not follow through with the recommendations. They did not maintain adequate housing; they did not participate in family therapy; they did not provide documentation of their current income; and they did not maintain contact with the Department. They did not demonstrate an ability to meet

the children's needs. Dr. Gildea testified that she did not find the grandparents to be a suitable placement for the children. The trial court accepted Dr. Gildea's testimony and recommendation. It did not find that the maternal grandparents would be an acceptable relative placement for the children, and there were no other suitable relatives who were willing to care for the children.

Accordingly, the trial court did not err in approving the foster care plans with the goal of adoption.

## II. Termination of parental rights

Mother's parental rights were terminated pursuant to Code § 16.1-283(C)(2), which states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Mother argues that her incarceration is "the primary cause of her inability to remedy the conditions that led to foster care." She contends that she has shown "a consistent and active interest in her children" by writing letters to them and the Department while in prison. Once she was incarcerated, she took several parenting classes and other classes to improve her education and job skills. She asserts that "her failure to remedy the conditions was not without good cause."

> While long-term incarceration does not, per se, authorize termination of parental rights . . . it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the children will be served by termination.

Ferguson v. Stafford Cnty. Dep't of Soc. Servs., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992).

Mother was on bond for four months after the children were removed and prior to her incarceration. During that time, mother missed the meeting for the women's substance abuse group therapy, and when it was rescheduled, she did not attend. She did not participate in NA or AA meetings while on bond. She did not maintain weekly contact with the Department, and her visitations with the children were "sporadic."

At the time of the hearing in circuit court, the children had been in foster care for approximately two years, and mother still had several years left on her prison sentence. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The evidence proved that mother was unable to remedy substantially the conditions that led to or required continuation of the children's foster care placement, within a reasonable period of time. Therefore, the trial court did not err in terminating her parental rights to her three children.

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.